Well, next to your argument in Case 12-815, Sprint Communications, v. Jacobs. Mr. Simeon. Mr. Chief Justice, and may it please the Court. The IUB's arguments here would transform younger abstention from the exception into the rule for State agency adjudications. Virtually all State agency decisions, even on issues of Federal law, would be subject to challenge only in State court. There's no basis for that broad rule in this Court's decisions. Younger abstention began with the traditional principle, going back to the time of the framing, that Federal courts sitting in equity shouldn't intrude on State criminal cases. This Court's decisions have, of course, expanded younger, slightly beyond criminal cases. In Huffman and Moore and Traynor, the Court extended younger to civil enforcement actions in aid of State criminal laws. In Middlesex County and Dayton, the Court extended younger to administrative disciplinary actions. But all of these cases are still coercive civil enforcement actions, where the State's enforcement interests are similar to those in criminal cases. Sotomayor, one of the problems I have is I don't know how to define coercive. The line seems very hard to draw. There are plenty of examples in the brief where some courts have said this kind of proceeding is coercive and that kind is not. So is it worthwhile using that distinction at all, or should we be thinking about going back to basic principles and doing something like the Second Circuit does, which is to say it's a sovereign interest rather than a personal interest? Your Honor, we've argued that there's no magic to the word coercive. Coercive is a sort of shorthand that the lower courts have used to mean coercive in the ways that this Court's younger decisions are coercive. So I think the question of how far this Court has extended younger is really the heart of this case, as opposed to sort of what is the meaning of the word coercive. And I think, as I was saying, the Court started with criminal cases and it extended that principle somewhat in Huffman and Moore and Traynor. Sotomayor, those were when most of them involved State proceedings. Yes, but there's a specific kind of State enforcement action. In each of those cases, this Court held that the State enforcement action was in aid of criminal laws. So it's a small extension of the traditional principle that courts sitting in equity don't intrude on State criminal cases. Sotomayor, but that went further in Pennzoil and in New Orleans, or perhaps not. Yes, the Court went further in a couple of different directions, and I want to try to address them separately, if I may. The first direction is really the Dayton-Middlesex County cases. Those were administrative disciplinary actions. And I think the Dayton case is actually especially helpful here in drawing the kind of line that you're looking for, Your Honor. The Dayton case helps to give some substance to exactly what is a civil enforcement proceeding. So in Dayton, the Ohio Civil Rights Commission conducted an investigation and found that the school there had engaged in discrimination on the basis of sex. The commission proposed a consent order, and it told the school, if you don't agree to this consent order under which you need to hire back the professor, I mean, the teacher, and pay her back pay, then we're going to proceed to disciplinary action. We're going to file an administrative complaint. The school ignored the consent order, refused to show up for a hearing that the commission had scheduled, and so in Dayton, the State filed an administrative complaint charging violations of the Ohio Civil Rights Act. And those violations that were charged were third-degree misdemeanors, subject to fines, subject to jail time, up to 60 days in jail. So we think that Dayton gives some substance to what is a civil enforcement action. It's the sort of proceeding where you have an investigation, you have factual findings, you have an administrative complaint, you have the possibility of civil penalties and potentially, in that case, there was jail time as well. Ginsburg. Mrs. Simione, the background of this case I don't quite grasp. You originally said that you wanted to make sure there was no disconnection pending the FCC's resolution of the issue. That's exactly right, Your Honor. Has the FCC had a proceeding to resolve it? Yes, although the FCC is surprisingly adept at not resolving the issue in the proceedings that it holds to resolve the issue. So in fact, the FCC had a proceeding pending before it at the time that this case was before the IUB in which Sprint expected that the FCC would resolve this issue. What the FCC did was resolve the issue of what inter-carrier compensation regime applies going forward, but it didn't address these calls that have already occurred. So this is a sort of strange corner of telecommunications law now. Going forward, the FCC has applied a specific inter-carrier compensation regime under Federal law to this kind of call. But going backwards, the appropriate inter-carrier compensation regime to apply under the 1996 Act, under the Federal law, is still at issue. Well, why wouldn't you say there were no abstentions? You have your case in Federal court, and the Federal judge says the FCC hasn't spoken. So I don't want to step out in front of the FCC on this question. We strongly urge the IUB not to address these issues of Federal law. The IUB, I think, was frustrated with the FCC, which had not implemented the relevant provisions of Federal law, and the IUB reached out to make decisions on Federal law. And all we're saying in this case is that we think that we ought to be able to challenge those decisions that the IUB made as to what's an information service, what's a telecommunications law. Ginsburg. You could challenge it in the State court, with this Court eventually, but there's a proceeding going on in the State court, and there's a review, State review, attempt to do that, and you're saying, we can cut off this administrative process that ends in State review, we can cut it off and go to the Federal court. To be clear, Your Honor, we actually aren't seeking to enjoin any proceeding in the State. We filed the action in State court because we were required to by Eighth Circuit law. The Eighth Circuit has a line of cases. Ginsburg. You explain that, but in the review, in your review petition from the State court to the State court, you brought up more than just this, the question of these charges. Yes, Your Honor. This is a situation quite comparable to the England case. In the England case, the Federal court plaintiffs thought that they were required to go to State court with their Federal law issues. And this Court said that they didn't have to go to Federal court to State court with their Federal law issues, and since they did, they were still entitled to reserve their Federal law issues for Federal court. In our case, we actually were required by Eighth Circuit precedent to go to State court. The Eighth Circuit rule is that if you don't go to State court with your Federal law issues, then abstention, younger abstention, applies anyway, even though there's no State proceeding whatsoever. So in this case, we went to State court, but only because we had to under Eighth Circuit, under the Eighth Circuit's unusual law of younger abstention. When we got to State court, we tried to essentially do an England reservation. We said to the State court, we'd like to stay the Federal issues while they go forward in Federal court, because, of course, the Federal court has jurisdiction and a virtually unflagging obligation to exercise that jurisdiction. The State court actually held those issues in abeyance for two years while the abstention issues were heard in Federal court. When the Federal abstention issues were decided by the Eighth Circuit, incorrectly, we think, the State court decided to go forward. But our argument here is that in a system of concurrent jurisdiction where we have the right to be in Federal court to get review of our Federal law issues, the fact that we were forced by Eighth Circuit law to go to State court, too, shouldn't preclude the Federal court proceeding from going forward. Kennedy, what would have been the ruling, do you think, what would have been the correct ruling? If you had filed your Federal action while the case was still, the issue was still pending before the Iowa board, in other words, before the State judicial review process kicked in, would they, would your analysis of the case be the same or would we apply some different process? It would not be the same, Your Honor, but we do think that we should. Because it would be a, I don't, because it would be Burford at that point or what? I don't think it would be, I don't think it would be Burford, because the State doesn't argue that there's a complex regulatory regime here of the sort that's covered by Burford. What we think is that if this were still before the IUB, that would really take us back to our main argument here in this case. Our argument is that neither the State court proceeding nor the IUB proceeding was the kind of civil enforcement action to which this Court has extended Younger. So even if we'd filed in Federal court at the time the proceeding was still pending before the IUB, we think that Younger still shouldn't apply. But here there's an additional reason why it shouldn't apply. We waited for the IUB proceeding to conclude. And, by the way, we then paid the invoices that Windstream wanted us to pay. There's nothing further that we could be obliged to do here. We've already paid. But the additional reason why we think we would, we should prevail here really goes to the issue that this Court reserved in Nopce. So in Nopce, the Court assumed without deciding that the agency proceeding and the State court review of the agency proceeding were a unitary proceeding. We think that those proceedings should only be treated as unitary in situations where the State interests at the two levels are similar. So in Burford, to go back to your question, Your Honor, in Burford, the State appellate court was participating in the regulatory process with the State agency. And, of course, this Court treated that as a unitary proceeding. In this case, the State court proceeding, as the IUB discusses on pages 33 and 34 of its brief, has nothing to do with a partnership with the agency. The relevant partnership here, the relevant place to review the Federal law issues, is Federal court. The State's only interest in the State court proceeding here is a State interest in State court review as opposed to Federal court review of Federal law issues. That's not the same kind of interest that it had at the regulatory proceeding level. So our view here is that issue in Nopce of, you know, is the State interest for purposes of Younger the interest at the agency level, or is there a separate interest when it comes to State judicial review of State agency action and Federal judicial review of State agency action? We think that that should be resolved in our favor. So that's a yes. Kagan. Kagan. Kagan. And could I take you back to the agency proceeding? Because I guess I understood from your respective briefs that you say the agency proceeding was not an enforcement proceeding, and the agency says it was an enforcement proceeding because you might have brought it initially, but you tried to get out, and then the agency compelled you to keep on going in its process. So could you explain that to me? I can do my best. It's somewhat complicated. We went to the agency with an issue of State law. We went to the agency to ask the agency to hold that WinStream was not entitled to stop connecting our calls to its customers without I.U.B. approval under Iowa's consumer protection rules. So that's the issue that we took to the State agency. When we got to the State agency, WinStream said, oh, no, no, no, we're not going to really stop connecting your calls to our customers, because that's a big no-no in the telecommunications world. You're not supposed to stop connecting calls. So they — that dispute went away. What the I.U.B. did was it reached out to decide a different set of issues, the underlying question of what inter-carrier compensation regime should apply to these calls. So at that point, the I.U.B.'s theory now is when they reached out to decide these Federal issues under the 1996 Act, you know, what's an information service, what's a telecommunications service, what inter-carrier compensation regime applies here, when they reached out to decide those Federal issues, they say this case became a civil enforcement proceeding. But this takes me back to my description of Dayton. Dayton was a civil enforcement proceeding. There was an investigation there. There was a finding of violations of the Ohio civil rights statute. There was an administrative complaint charging third-degree misdemeanors and threatening penalties and jail time. That is the kind of civil enforcement proceeding to which this Court has applied younger. That's the kind of proceeding that's like a criminal case that takes us back to that traditional principle that courts, Federal courts sitting in equity, don't intrude into State criminal proceedings. Alitoso, if the only relief available had been reinstatement and back pay, would that matter? No, I don't think it would matter, Your Honor. I think that, again, the posture of the case was very different. There, you know, there was, again, there was an investigation. There was a due process right to a hearing. There was an agency that was enforcing existing State law. Here, the agency was essentially implementing Federal law. The FCC hadn't implemented these provisions. Everyone in the industry was frustrated. We were frustrated. We had taken these issues to the FCC. You know, please decide what inter-carrier compensation regime applies here. The FCC hadn't done it. And so the IUB, quite understandably, reached out to decide those issues. But in announcing the kind of inter-carrier compensation regime that ought to apply to these calls, the IUB wasn't conducting an enforcement proceeding against Sprint. An interesting point here, I think, is that the IUB's position makes for something very strange under Ex parte Young. You know, agencies generally have the choice to proceed either by rulemaking, which they often do, or by adjudication. And they can make the exact same rules in either way. Under the IUB's theory, if the agency proceeds by rulemaking under Ex parte Young, you can go to Federal court and get an injunction. If the agency proceeds by adjudication, making the exact same rules, you can't, because you – there's a unitary proceeding up through the State court appeals, and you're stuck with that, and certiorari review by this Court, of course. That, to me, makes no sense. Under Ex parte Young, the agency's decision to proceed by rulemaking versus proceeding by adjudication, which, by the way, the IUB had in this case. The IUB, when the dispute disappeared between Sprint and Windstream, the IUB could have said, we'll close that docket and we're going to start a rulemaking to implement these provisions of Federal law that the FCC can't seem to get around to implementing. In that case, we would, of course, have been entitled under Ex parte Young, and this is an Ex parte Young case, we could have gone to Federal court and gotten an injunction. A declaratory ruling and an injunction. And, of course, it really doesn't make sense to distinguish whether that relief is available on the basis of what – how the agency decides to proceed. I want to go back to a question that came up earlier about Pennzoil and Judice and how they fit in to this Court's extension of that traditional principle that courts of equity shouldn't intrude into State criminal proceedings. Judice and Pennzoil are a kind of unusual corner of younger abstention law, because they both involve challenges to the processes that the States use to enforce their judgments. So in Judice, the Federal plaintiff was asking – was challenging under the Due Process Clause New York's contempt procedures, sort of how they went about holding folks in contempt. In Pennzoil, Texaco was challenging the bond requirements to appeal in Texas. But they were both Federal court cases bringing challenges to aspects of the way – the way that the States enforce their judgments. In this case, Sprint has no quarrel at all with any aspect of Iowa law. We followed Iowa law to a tee and filed the State court appeal that the Eighth Circuit required us to file. Well, those cases are different, but why is there a – why is there a greater Federalism concern in those cases than in this case, where the IUB has a legitimate interest in how much citizens of Iowa pay for telephone service? Well, I think this really goes back, Your Honor, to the traditional principle that I started with. The basic idea of Younger is that Federal courts sitting in equity don't intrude into State criminal proceedings. That's a very important traditional rule because that's where the State police power is really at its zenith, you know, enforcing State criminal law. We think that the Pennzoil and Judice cases are very similar. The idea that a State can't enforce a judgment once its courts have gone through the process of coming to judgment is – would be very unsettling. That's the kind of, you know, State police power at its absolute zenith. Now, all the things that State regulatory agencies do are important, you know, but not every rule of a State agency is at that same level of importance as a State criminal proceeding. Alitoso, but then if the question is whether something is tied to something that can be regarded as criminal or quasi-criminal, what about Middlesex County? That's not criminal. Well, Middlesex County is not criminal, certainly. It's a – I call it an administrative disciplinary proceeding, and I think that the State's interest in that kind of disciplinary proceeding is, in fact, very similar to its interest in a criminal case. In Middlesex County itself, of course, a lawyer had referred to a trial as a kangaroo court and a legalized lynching, and the New Jersey Ethics Committee, you know, said that that was the sort of conduct that couldn't be permitted under the State bar rules. So that is not literally a criminal case. It is one of this Court's extensions of the principle to the civil enforcement proceeding context, but it does seem to me to be motivated by very much the same sorts of interests. Ginsburg. What do you say about the argument that once the IUB decided to go on with this proceeding you didn't want them to, but they did, that that then became a proceeding for them to enforce the access charge? Well, I think, again, Your Honor, that that goes back to the differences between this sort of case and the Dayton case. In this case, what the IUB really was doing was announcing its understanding of these provisions of the Federal Act. In a case like Dayton, where this Court has applied Younger, the commission there was, you know, seeking to penalize wrongdoing by the school. And it seems to me that there's an important difference with respect to that traditional principle that Younger reflects of not interfering with State criminal actions. There's a big difference between when the State announces rules that will be broadly applicable throughout the industry, like here, and when the State is actually seeking to punish wrongdoing, as in Dayton or as in Middlesex County. If there are no further questions, I'll reserve the balance of my time. Thank you, counsel. Mr. Lynch. Mr. Chief Justice, and may it please the Court. Under Sprint's proposed test, after Sprint chose to invoke the jurisdiction of the IOU Utilities Board, Windstream could have gone to Federal court at any time to enjoin the board proceedings, because under Sprint's test, the board proceedings were remedial and the Younger abstention was not applicable to those proceedings. That's true despite the fact that at that time, when the petition was filed, the board was faced with a compelling State interest, that is, an immediate and direct threat to public health and welfare. If Windstream had been able to go to the Federal court and interrupt the State proceedings at that moment, that very act would unavoidably cast aspersions on the State's ability to resolve the Federal issues here in the context of that important State interest. And that is precisely one of the evils that Younger abstention is directed to. Roberts. So, but I mean, is there a different category? Some of the normal regulatory interests are important and other regulatory interests are not? I mean, it seems to me the line that Younger drew, or that I thought it was drawing between criminal and civil, has been eroded to a considerable extent. But your friend analogized the other cases, for want of a better word, to the sort of quasi-criminal or at least touching upon the process as opposed to a particular proceeding. I mean, do you think that the abstention applies in the case of every regulatory proceeding? No, Your Honor, we do not. Well, how do you tell? Let me give you two parts to that answer. First of all, that we believe that it applies when the agency proceedings are engaged in enforcement of a State statute, State law, that that's kind of the touchstone for when you're more likely to see an important State interest. When aren't they? I've got to take this case and make two changes to it, and I have an example for you. Instead of having Sprint in the position of saying that the access, intrastate  dispute between Sprint and Windstream was over merely the calculation of the amounts, over ambiguous language within that tariff, and because Sprint admitted that the tariff applied, whatever it meant, there would be no threat of disconnection, under those circumstances, you truly do have the garden variety commercial dispute between two parties that Sprint tries to characterize this case as. But this case involved more. This case involved the filed tariff doctrine, a statutory provision the Court's familiar with that the Board is charged with enforcing. This Board at least initially or, excuse me, this case also involved initially that threat of disconnection, which added an element of exigency to the Board's action that is not present in most of these cases. Sotomayor, what's left of Colorado River under your view of this case? I mean, in Colorado River, we made it very clear that abstention should be the exception. I always thought that was a driving principle, which Federal law should be announced by Federal courts. If we take the Eighth Circuit rule, where everything is unitary and required, and your rule that any time it involves a State agency, essentially, it's subject to abstention, what's left of Federal courts having any jurisdiction? Well, first of all, let me say that the question of whether it's a unitary proceeding or whether there's a fork in the road after the agency has completed its proceedings, that question is not part of the question presented here in this case today. The Court does not need to reach that question and can do as it did in New Orleans Public Service and simply assume that it is a case of unitary requirement without deciding that. Well, the Eighth Circuit has decided that question. Right. They say it is. There is, in fact, under our research, about a four-to-three split among the circuits on that question. Parties haven't really briefed it. No, I agree. And if you're going to get to that question, in fact Why don't you get to the essence of my question, which wasn't that one. Then what's left of the Colorado River case is what has always been there, which is when there is not an important State interest, younger abstention does not apply. And that is always the touchstone of this analysis. You know, the three Middlesex County factors, the first one is easy. Is there a pending State proceeding or not? That's always either going to be there or it isn't. That's not a problem. In much that way, when Sprint chose to come to the Iowa Utilities Board, it could have gone to Federal court instead, I assume. It chose to come to the Board for relief, even though it says that the issues involved were Federal law. The third factor under Middlesex County, the ability of the courts, the State courts or State process to address the Federal questions, also typically not an issue in this type of proceeding. There is the right of appeal to the State courts, and that is going to provide an adequate remedy. Sprint has not challenged that in this case. Scalia. Especially in cases that involve jurisdictional issues, it seems an awful waste of counsel's time and client's money to be litigating about which court you ought to be in. And it seems to me to avoid that, the lines ought to be clear. And it doesn't seem to me that the line, you know, whether there is a significant State interest involved or not, is a clear line. You can argue about that in almost any case. So I'm disinclined to use that kind of a test, along with any others. Why can't we just limit younger abstention to the three categories discussed in NOPC and say, that's it, no more? Because it would, if you were to take that approach, it would result in a denial of abstention in cases like this one that present exactly the evils, the concerns that were presented in Younger, in terms of disrespect for the State's ability to resolve Federal questions, the concerns of Federalism, the concerns of avoiding duplicative cases in the courts. Any purely civil case that raises that kind of an issue can arguably be subject to Younger abstention, is that right? It would be up to the judges to decide whether there is an important State interest there or not. Are you saying, then, that in every State agency adjudication appended by State court review, Younger would apply? No, Your Honor, I'm not. As I said, we have only the two cases, we have Middlesex and Dayton, and you say this case belongs in that Younger category. What State court adjudication, State agency adjudications attended by State court review would fall outside Younger on your rationale of what Younger covers? A State agency adjudication that did not involve the State agency attempting to enforce a State statute or State law. And that's, as I tried to describe in my earlier example, if that would be the case here, if the dispute between Sprint and Windstream had been something other than does the ---- What was the State law here? They were interpreting Federal law. The State law here was Iowa Code section 476.5, the filed tariff doctrine, which requires that, in this case, that Windstream charge Sprint for providing intrastate access services. That mimics the Federal law. On the State side. That's the ---- it's our version of that Federal law, yes. But you don't derive any power independent of that Federal law. Oh, no, I'm sorry. I misunderstood. This is an independent State statute. It is not ---- it is analogous to the Federal interstate filed tariff doctrine. But it is not dependent upon it at all. It's existed for I don't know how many years. Sotomayor, there are other abstention doctrines that can take care of State interests, aren't there? There's Buford and there are many others. Inappropriate cases, yes. So I don't know what why Younger, as you're following up on Justice Scalia's question, why Younger has to be the only vehicle? Why we need to create more categories than NAPCI did to protect State interests when we have an awful lot of other doctrines that do that already? I don't know that we're asking you to create a new category or a new extension. We felt that this case fit very clearly within the Middlesex test under Younger abstention. And it was a straightforward application of that three-part test and obviously the district court judge agreed. It was not ---- it does not require any extension of Younger to apply that principle to this case. Sotomayor, have we ever used the Younger abstention in a case where the Federal plaintiff also filed the Federal ---- the State action as well? Do you mean the State action before the board or before the court? Before anybody, court or board. Not that I'm aware of, no. But that brings me to my second point, which is that if the Court were to decide to apply the coercive remedial distinction as a test in this case, the results of the ---- before the Eighth Circuit should still be affirmed because the board     The Robert Swenson petition that I just alluded to here today, after Sprint filed it's petition with the board, Windstream came back and said, in essence, we will not disconnect Sprint as long as they pay the access charges going forward. They can hold the money going back, we won't disconnect them as long as they pay going forward. Sprint came back and said, we're not going to pay you going forward, but you're not going to disconnect us, we've got what we want, we want to withdraw our petition. And at that point, the board said, that's fine, you can take your petition, but don't go anywhere, stay here, we're going to get to the bottom of this, because if we let you go, it's going to recur. This case will go. Roberts. I'm sorry, it's going to what? Reoccur. Oh. The case will inevitably be before the board again, perhaps next time with Sprint — with Windstream filing instead of Sprint, or Sprint saying they're threatening us with disconnection again. There was no point in letting it start over. We got to the bottom of it to see what was going on. The lower courts have identified various — this goes to your earlier question, Justice Sotomayor, about how to define coercive proceedings. And the lower courts have identified a number of factors that they have considered in this, including who initiated the proceeding, was participation in the proceeding mandatory, does the Federal plaintiff contend that the State proceeding is unlawful, or does the Federal plaintiff instead seek a remedy from some other State-initiated — inflicted wrong? Is the Federal plaintiff alleged to have committed a bad act? And finally, whether the proceeding involved the State's enforcements of its laws. Roberts. Well, don't all — it's sort of like the important State interests. I assume the State's not doing anything unless they think it's important. And any type of administrative proceeding, remedial or otherwise, has to have some bite to it. There has to be something that's going to happen to you if you don't do what they tell you to do. So in that sense, I mean, almost every administrative proceeding is coercive. If it can be backed up, as this one could, when the Board issued its order and directed Sprint to make payment to Windstream, had Sprint failed to do that, Sprint could have been subject to civil penalties assessed by the Board. So if — I think to the extent that the agency proceedings are backed up with that kind of enforcement, of course. Well, my point is it doesn't seem like much of a limiting test. If you can say any time — sort of any time anything bad can happen to you as a result of the administrative proceeding that's coercive, it doesn't seem like a serious constraint on the application of Younger. And what that — what that may go to, Your Honor, is the fact that the coercive remedial distinction is not any easier to apply than the important State interests. Well, could you give me an example of State administrative proceedings that would not fall within your understanding of the scope of Younger? With respect to my own agency, for instance, a — well, there's all the obvious examples, the legislative action, the cases where there's no State agency or no State proceeding pending. But in terms of a quasi-judicial agency action that would not be entitled to Younger abstention, I've given the earlier example, if the parties were in what's called the garden — truly in a garden variety commercial dispute between two parties and the agency is simply resolving that dispute between the two parties, the State's interest is substantially diminished in that proceeding. And there — Why is — I'm sorry, I was just going to say, why is that? Presumably the State is resolving that dispute pursuant to some State law, State regulation, State policy. I don't know why the State interest is unimportant simply because it's the resolution of a private dispute. Let me be clear. I don't say the State interest is unimportant. It is simply diminished. And at some point, it would be diminished to the point where Younger abstention would not be appropriate. Does it matter if it's just purely Federal law? I mean, think of a civil case involving a State on one side and private parties on another. In a State court, which has jurisdiction over Federal laws, the State claims that the defendant has violated, civilly, a Federal statute. There's an action also in Federal court. In your view, does the Federal court have to abstain? If the Federal plaintiff brought the Federal action in order to enjoin the State court proceeding. No, no, there's no action for an injunction. What they want is the judge to decide the case. The private party wants the Federal judge to decide his case. That's all. It's a matter of interpreting Federal law. Now, in your opinion, is Younger, does Younger, not some other doctrine, does Younger require abstention? Yes. Yes. Okay. So on your view, we can never have a case proceed in Federal court, even on a purely Federal issue, if, in fact, there is involving this a State civil case on the same question. Involving the same parties. Yeah. Yeah. Well, I can't think of a – doesn't it often happen that there are such cases? I mean, I would think that wouldn't be too difficult. I mean, either there never is one and you tend to be right, or there are a whole lot of them and you tend to be wrong. I've just never heard it put in that extreme way, and maybe you're right. I don't know what your authority for it or any light you shed. I think my authority for it is in this case's – in this Court's Younger abstention decisions. The Middlesex County test is a simple three-part test. The focus is always on the second factor. What is the State's interest? What is the important State interest? Well, suppose it's a licensing procedure. Somebody's been denied a license to be a barber or a hairdresser, and the person thinks – wants to challenge that in Federal court. Would Younger apply there? No, I don't think that would be a – Why? I don't believe that would be agency action in a judicial manner. Why not? I'm assuming that they filed a form, filled it out, gave it to the agency, and it was denied. That seems more to me to be of an executive character. Well, suppose there's some – there's an administrative agency in the State that hears appeals from that. If the person applying for that license had then gone on to ask for a hearing before that department that hears administrative appeals and had had a quasi-judicial proceeding in order to make that determination, then I believe that Younger would – could apply there if there's an important State interest attached to the denial of that license. I guess, Mr. Lynch, the concern is, given that we think agencies are doing things that implicate important State interests most of the time, that's why they do them, that your test, and not just your test, but the Eighth Circuit's test, would turn agency adjudicators into the primary legal decision-makers in our system on all matters that they were, you know, wanted to get into, including matters of Federal law. That would – to the extent that the cases are brought before the State agencies in the first place and the Federal issues are raised there before it goes to the Federal court, that would be correct. I mean, that does seem like a big proposition. No? I mean, do you think that Younger says that or that Middlesex says that or that we've ever said that? I think that Middlesex, combined with Huffman, providing for the State a unitary proceeding, does, in fact, provide for that result. It leads logically to that. Did Younger say before? I'm sorry? Did Younger say before? No. He just said before. Middlesex. No. So in your view, it doesn't matter which is brought first, I guess. No. Middlesex County requires that there be a pending State proceeding. There is one other argument I'd like to address. Is it correct that under Eighth Circuit law, the party that wants to bring the Federal lawsuit has to go to State court first? You mean following the agency proceedings, the unitary proceedings? That is the Eighth Circuit's approach, yes. That once you've gotten on the State train, you have to ride that through to the end of the State process. I thought that Sprint said that they had to go to State court whether they wanted to or not, or else they wouldn't be able to go to Federal court. I believe Sprint's argument, I don't care, don't want to speak for them, but I believe their argument on that point was following the board's decision. They feel that the Eighth Circuit law required them to file petitions in both Federal court and to invoke the judicial review process in State district court. Breyer, if Younger only applies to State proceedings that are brought first, then I guess we could have a criminal defendant who is not yet one bring an action in Federal court to say that the law is unconstitutional or something or violates a Federal law. And then the State prosecutes him criminally, and the Federal court couldn't – and the Federal court could enjoin the criminal proceeding. That would be the – very much like the case in this Court's decision in Steffel v. Younger. So we've said that you can't – you can enjoin a criminal decision, a criminal proceeding in a State court as long as the criminal proceeding wasn't brought first. Is that what this Court has said? As I read it, what this Court has said is that there is no Younger abstention when there is no pending State criminal proceeding. Breyer, there is a pending one by the time they get around to it. And what? So I'm sorry I have to ask you to clarify. You've come up with a couple of rules that strike me as counterintuitive, and so I'm trying to figure that one out. And the before-after one doesn't seem to work too well in my mind, because it would seem, you know, you couldn't – the Federal court couldn't – or what – the Federal court could enjoin a criminal proceeding that came up later, in your view, I guess. Yes. I think the Federal court at least could answer the Federal question presented. I guess I have a hard time seeing – I'll work it out. I'll work it out. Okay. The last thing I wanted to address is there is a lot of discussion, particularly in some of the amicus briefs, to the effect that the Board was acting under Federally delegated authority here under some kind of deputized Federal agent. That is not the case at all here. The Board was acting under State law authority. Sprint relies, for instance, on the AT&T v. Iowa Utilities Board case for the proposition that the 1996 Telecommunications Act asserted Federal authority to regulate local telecommunications matters. That's true insofar as it goes, but that case is limited to matters addressed by the 1996 Act, which was addressed to creating competition within the local exchange marketplace. What we're talking about in this case is access services by which a long-distance carrier such as Sprint delivers a long-distance call to the local exchange carrier such as WinStream for completion to WinStream's customers. That service remains practically a monopoly service. Sprint has no way to get those calls to WinStream's customers other than by connecting it to WinStream and letting WinStream compensate WinStream for carrying those calls to the end. Because of that, the Federal Telecommunications Act of 1996 in section 251G expressly reserved the tariffed access charge regime and did not affect the State's jurisdiction over intrastate access charges. Sprint acknowledges that in its reply brief at pages 22 and 23, but claims that the situation is unclear as to what applied between 1996 and 2011. But the fact remains that Sprint paid those intrastate access charges without protest from 1996 to 2009 when it made the unilateral decision to change the process and start withholding those payments. Ginsburg. Well, then why wouldn't you say that Sprint was not the initiator of this State process? Because Sprint withdrew its complaint, right? I'm sorry. I missed a few words there. Sprint withdrew its complaint. Sprint was allowed to withdraw its complaint. So at that point, it becomes the Board's proceeding. It becomes a proceeding initiated by the Board and not by Sprint. That is correct. Thus, even under the first-to-file test, we believe that this case was coercive at the time it was before the Board. To the extent that the coercive remedial distinction matters. Those are the points I had to cover. If there are no further questions, thank you. Thank you, counsel. Mr. Simeon, you have 6 minutes remaining. I hope to be very brief, but there was a lot of discussion about the problem with the IUB's approach lacking sort of meaningful limits. And I just want to say a couple words about the Middlesex County test, because I don't think that that lack of meaningful limits necessarily follows from the Middlesex County test. Although I do think some clarification of the test would be helpful. Under Middlesex County, of course, younger requires an ongoing state judicial proceeding. And it requires an important state interest. So with respect to ongoing state judicial proceeding, the IUB understands judicial to be any adjudicative proceeding. But as we argue in our briefs, that's not necessarily consistent with the rest of this Court's cases under applying younger. Judicial, we think, means an exercise of the State's judicial enforcement authority. So limiting that prong of Middlesex County to an exercise of the State's judicial enforcement authority would help to draw this line. A second similar point is with respect to the state interest prong of Middlesex County. We argue, of course, that the relevant State interest is the State's interest in the ongoing State proceeding. Here, the ongoing State proceeding was judicial review of the agency proceeding. So by limiting the proceeding that you're looking at to the ongoing State judicial proceeding required by the first prong of Middlesex County, then you're really just looking at the State's interest in State judicial review of Federal law questions as opposed to Federal court judicial review of Federal law questions. And again, that seems to me to help to draw a line. Unless there are further questions, that was all I had. Roberts.